KAREN M SLUSAR,

    Plaintiff,

v.                 Case No. 22-cv-0857-bhl

IEWC CORP,

    Defendant.

_____

# ORDER GRANTING PARTIAL MOTION TO DISMISS
_____

  On July 28, 2022, Plaintiff Karen Slusar filed this lawsuit against her former employer, IEWC Corp, a company that had employed her for more than thirty years. (ECF No. 1 ¶10.) IEWC terminated Slusar's employment in June 2021, contending she had failed to take her performance improvement plan seriously enough. (*Id.* ¶55.) But, according to Slusar, that reason was pretextual, and IEWC actually fired her to replace her with younger, male counterparts. (*Id.* ¶¶63-71.) Based on these allegations, Slusar claims IEWC violated her rights under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. (*Id.* ¶1.) She also asserts a state-law claim for unpaid wages under Wis. Stat. §109.11(2)(b), and, based on that claim, seeks payment of her attorney's fees under §109.03(6). (*Id.* ¶77-78)

  IEWC has moved to dismiss only Slusar's state law claim. (ECF No. 8.) IEWC argues that Slusar's claim for unpaid wages fails because the company paid her the wages she claimed after she filed an administrative complaint with the state Department of Workforce Development (DWD) and before she filed this lawsuit. (ECF No. 9 at 2.) Because Wisconsin law only allows recovery of civil penalties for unpaid wages when those wages remain unpaid at the time the employee files suit, IEWC's motion will be granted.

# FACTUAL BACKGROUND[1]

Plaintiff Karen Slusar is a former employee of IEWC Corp. who resides in Wisconsin. (ECF No. 1 ¶4.) IEWC is a Wisconsin corporation that supplies wire, cable, and wire management products with its principal place of business also in Wisconsin. (*Id.* ¶¶5-6.) Slusar worked at IEWC for more than 31 years, from January 15, 1990 until June 21, 2021. (*Id.* ¶10.) While at IEWC, Slusar worked as a Territory Manager. (*Id.* ¶11.) Slusar was assigned to the Indiana territory from 1992 to August 2020 and then also assigned to the Minnesota and Western Wisconsin territory. (*Id.* ¶¶12, 27.)

During her tenure at IEWC, Slusar was a valuable sales employee. She notes that the Indiana territory's business grew by more than $13 million from 1992 to 2020 when she was Territory Manager. (*Id.* ¶13.) She further highlights that the company's profits in that territory averaged $3 million annually between 2011 and 2021. (*Id.* ¶14.) Slusar thus received "significantly higher" fixed and incentive pay than others in the Territory Manager position. (*Id.* ¶16.)

The COVID-19 pandemic and its resulting supply chain problems affected Slusar's ability to perform her job. Her largest Indiana accounts slowed their operations and reduced their orders in the 2020 sales year. (*Id.* ¶¶17-20.) Even still, Slusar's new supervisor, Mary Craig, recognized the sales challenges brought on by the pandemic and rated Slusar as partially exceeding expectations in some areas and meeting expectations in other areas in Slusar's 2020 performance evaluation. (*Id.* ¶¶21-25.) Craig also asked Slusar to take over the Minnesota and Wisconsin territories because of her "experience and success building and managing the Indiana territory." (*Id.* ¶28.) Slusar accepted while also keeping her five largest Indiana accounts at Craig's suggestion. (*Id.* ¶¶33-34.)

Working the Minnesota and Western Wisconsin accounts brought a new set of challenges. The Minnesota territory's longtime account manager had separated from IEWC, and Slusar was therefore required to work with other account managers who lacked the same level of expertise. (*Id.* ¶37.) Slusar also took a week of bereavement leave in the Spring of 2021 when her father passed away. (*Id.* ¶38.) Despite these challenges, Slusar performed well. Slusar had already achieved nearly sixty percent of her yearly profit goal by May of 2021 and was on track for a

---

[1] The Factual Background is derived from Slusar's complaint, ECF No. 1, the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

twenty percent growth incentive bonus. (*Id.* ¶¶39-40.) She had also achieved a monthly adjusted profit figure well above the monthly average required to achieve incentive pay. (*Id.* ¶41.)

Then, without notice or any indication that her performance was unsatisfactory, on June 2, 2021, Craig provided Slusar with a Performance Improvement Plan (PIP). (*Id.* ¶¶42-43.) The PIP stated that Slusar's performance in the past five months was unsatisfactory in growing existing business and bringing in new business; she had been passing her own work onto others; her communication was difficult and unclear; and she had an unprofessional attitude. (*Id.* ¶44.) The PIP cited no specific examples or metrics but demanded that Slusar should achieve "all specific expectations" outlined in the PIP within 45 days. (*Id.* ¶¶45-46.) It also required weekly meetings to review Slusar's performance. (*Id.* ¶48.) Craig informed Slusar that she was no longer assigned to her top Indiana Accounts on the same day. (*Id.* ¶50.)

On June 21, 2021, just two weeks into the PIP, Slusar was told her employment was being terminated because Slusar "had not taken the PIP seriously" and had "not done enough." (*Id.* ¶55.) IEWC then promptly reassigned Slusar's Indiana accounts to younger, male Territory Managers. (*Id.* ¶58.) Slusar maintains that she was terminated on account of her gender and her age, and that her reassignment to Minnesota and Wisconsin territories, placement on a PIP, and termination were pretextual. (*Id.* ¶¶57-62.)

On July 28, 2022, Slusar filed this suit alleging Title VII termination due to gender and age discrimination in violation of the ADEA, and a Wisconsin law wage payment claim. (*Id.* ¶¶63-78.) More than a year before filing her federal complaint, on July 13, 2021, Slusar notified IEWC that she believed IEWC had underpaid her for her earned and unused PTO following her termination. (*Id.* ¶73.) When IEWC denied underpaying her, Slusar filed a wage complaint with the Wisconsin Department of Workforce Development. (*Id.* ¶74.) IEWC responded by paying Slusar the unpaid vacation pay she claimed ($2,861.64), and the Department closed Slusar's wage case on November 24, 2021. (*Id.* ¶¶75-76.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

## ANALYSIS

IEWC seeks the "partial" dismissal of Slusar's complaint, contending that Slusar's claim for violation of the Wisconsin wage payment statutes fails as a matter of law. (ECF No. 8.) According to IEWC, Wisconsin law precludes claims for civil penalties against an employer that pays disputed wages to an employee before the employee files a lawsuit. (ECF No. 9 at 2-4); Wis. Stat. §109.03(5); *Hubbard v. Messer*, 673 N.W.2d 676 (Wis. 2003). Because IEWC has already paid Slusar her owed compensation, it contends her wage claim cannot proceed. Given the Wisconsin Supreme Court's interpretation of the Wisconsin unpaid wage statutes, IEWC is correct.

Wisconsin law allows a trial court to order an employer to pay unpaid wages owed to an employee plus a civil penalty of not more than 100 percent of those unpaid pages, but only "[i]n a wage claim action that is commenced after the department has completed its investigation under s. 109.09(1)." Wis. Stat. §109.11(2)(b). According to the Wisconsin Supreme Court in *Hubbard*, the language of this statute means a plaintiff is not entitled to civil penalties if the wages due are fully paid before the employee commences an action in court. 673 N.W.2d at 678.

Slusar concedes this point and acknowledges she cannot prevail on her §109.11(2)(b) claim. (ECF No. 10 at 2.) But she insists that even with the underlying liability claim barred, she should still be entitled to pursue a claim for attorney's fees. (ECF No. 10 at 2.) Slusar argues that *Hubbard*'s holding is limited to civil penalties, and not attorney's fees incurred to recover the unpaid wages through a lawsuit or filing a claim with the Wisconsin Department of Workforce Development. (*Id.*) Thus, she maintains she should still be able to obtain an attorneys' fee award under Wis. Stat. §109.03(6), which allows a prevailing party to receive all other costs in an action by an employee against its employer on a wage claim, even if she has no viable claim for unpaid wages. (*Id.*)

The Court disagrees. Section 109.03(6) states in part that "[i]n an action by an employee or the department against the employer on a wage claim, no security for payment of costs is

required.  In any such proceeding the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses."  Slusar is correct that attorney's fees are recoverable under Section 109.03(6).  *See Jacobson v. Am. Tool Cos., Inc.*, 588 N.W.2d 67, 74 (Wis. Ct. App. 1998) ("The purpose of ch. 109, STATS., is to ensure that employees receive their full wages. If [the plaintiff] is not entitled to [her] attorney's fees, then [s]he will be forced to pay this amount of the wages awarded by the court. This will not make [her] whole.").  But that logic does not extend to cases like this in which there is no viable claim for unpaid wages.  Slusar admits, indeed she affirmatively alleges, that the DWD closed her wage case after IEWC paid her the unpaid compensation she claimed.  (ECF No. 1 ¶¶75-76.)  Once this happened, Slusar no longer had a wage claim under Wisconsin law.  *See Hubbard*, 673 N.W.2d at 678.  With that claim extinguished, Slusar no longer has an "action…on a wage claim" under §109.03(6). Without such a cause of action, Slusar cannot recover fees under the statute.  Section 109.03(6) provides for recovery of fees by a "prevailing party," but, as Slusar admits, her state wage claim fails as a matter of Wisconsin law and is being dismissed.  With the underlying claim dismissed, Slusar cannot recover attorney's fees on that claim.  IEWC's partial motion to dismiss must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that IEWC's partial motion to dismiss, ECF No. 8, is **GRANTED.**  Slusar's Wisconsin wage payment claim is **DISMISSED**.

Dated at Milwaukee, Wisconsin on January 17, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge